# EXHIBIT "A"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ULSTER                                    Index No.  2015-1558

JOSEPH L. IRIZARRY


ANNA M. IRIZZARY

---

## JUDGMENT OF DIVORCE

---

Steven Nussbaum, Esquire
Attorney for Plaintiff
108 Main Street
New Paltz, New York   12561
845 255 0743

---

To:   Anna M. Irizarry

PLEASE TAKE NOTICE:

NOTICE OF ENTRY:   The within is a true copy of a Judgment of Divorce
entered in the office of the clerk of the within named court on
November 18, 2016.

Dated:   11/22/16                    Steven Nussbaum, Esquire
                                     Attorney for Plaintiff
                                     108 Main Street
                                     New Paltz, New York   12561
                                     845 255 0743

No Fee
$5 Cert Dis
$10 Cert Copies

At a Term of the Supreme Court
Of the State of New York held in and for the
County of Ulster at Kingston, NY

PRESENT:  HON.  MARIANNE O. MIZEL

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ULSTER
-------------------------------------------------------------x

**FILED**
12 H 53 M

NOV 18 2016

NINA POSTUPACK
ULSTER COUNTY CLERK

JOSEPH L. IRIZARRY,

Plaintiff,

-against-

JUDGMENT OF
DIVORCE
2015-1558

ANNA M. IRIZARRY,

Defendant

-------------------------------------------------------------x

The action was submitted to this court for consideration on October 31, , 2015.

The defendant was personally served with the summons with notice and verified complaint within the state of New York.   The defendant appeared but did not serve an answer to the verified complaint.  There was a reply to the verified answer.  The parties entered into a written marital agreement on September 9, 2016, settling the ancillary issues and have otherwise agreed that this matter proceed on an uncontested basis;  and

The court has accepted proof of non-military status of the defendant and

The plaintiff's address is 184 Milton Turnpike, Milton, New York 12547 and social security number is    044 68 0443.   The defendant's address is 602 Orrs Mills Road, new Windsor, New York    12553    and social security number is 047 70 8460.

NOW, on motion of Steven Nussbaum, Esq., attorney for the plaintiff, it is

ORDERED, ADJUDGED AND DECREED that the marriage between JOSEPH L. IRIZARRY, plaintiff, and ANNA M. IRIZARRY, defendant, is hereby dissolved by reason of the marital relationship between the parties being irretrievably broken for a period of more than six months, pursuant to Domestic Relations Law Section 170 (7); and it is further

ORDERED and ADJUDGED that there are two children born of this marriage, to wit, Anthony Irizarry, d/o/b 9/2/1998 and Anthony Irizarry, d/o/b 8/4/1994 and none are expected to be born of this union; and it is further

ORDERED and ADJUDGED that the terms of the written marital agreement dated September 9, 2016 annexed hereto shall be incorporated herein by reference and shall survive the issuance hereof and shall not be merged into this judgment, and the parties are hereby directed to comply with all legally enforceable terms and conditions of said agreement as if such terms and conditions were set forth entirely herein, and the family court shall have jurisdiction of this matter together concurrently with this court for purposes of specifically enforcing such provisions of said agreement as are capable of specific enforcement to the extent permitted by law, and of making such further judgment as it finds appropriate under the circumstances existing at the time of the application for that purpose is made to is, or both;  and it is further

ORDERED AND ADJUDGED that both parties are authorized to resume the use of any former surname, and it is further

ORDERED AND ADJUDGED that the parties are not seeking equitable distribution, other than what was already agreed to in the written marital agreement of September 9, 2016; and it is further

ORDERED and ADJUDGED that notice pursuant to Domestic Relations Law Section 255 has been delivered to each party; and it is further

ORDERED that either party may resume the use of his or her premarital surname.

ENTER, October 31, 2016
KINGSTON, NY

_____
JSC, MARIANNE O. MIZEL

State of New York County of Ulster ss:
I, NINA POSTUPACK, CLERK OF THE COUNTY OF ULSTER, AND ALSO CLERK
OF THE SUPREME AND COUNTY COURTS, IN AND FOR SAID COUNTY DO
HEREBY CERTIFY THAT I HAVE COMPARED THIS COPY WITH THE ORIGINAL
THEREOF FILED OR RECORDED IN MY OFFICE ON 11·18·2016
AND THE SAME IS A CORRECT TRANSCRIPT FROM SAID ORIGINAL DOCUMENT
AND THE WHOLE THEREOF Judgment of Divorce Index # 15-1558
IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND AND AFFIXED THE
SEAL OF SAID COURT AND COUNTY.

DATE 11·18·2016    NINA POSTUPACK, ULSTER COUNTY CLERK

FILED
12 H 53 M
NOV 18 2016
NINA POSTUPACK
ULSTER COUNTY CLERK

MARITAL AGREEMENT

ARTICLE I

PREAMBLE

FILED
12 H 53 M
NOV 18 2016
NINA POSTUPACK
ULSTER COUNTY CLERK

1.1   THIS AGREEMENT is entered into by ANNA M. IRIZARRY ("Wife") residing at 602 Orrs Mill Road, New Windsor, NY    12553 and JOSEPH L. IRIZARRY, ("Husband") residing at 184 Milton Turnpike, Milton, New York    12547.

1.2  The date of this agreement shall be the date of the last signature affixed hereto.

1.3  The purpose of this agreement is to provide for the distribution of marital assets of the parties and to make equitable arrangements for custody, support and maintenance and other matters relating to the marriage of the parties.

1.4  By entering into this agreement the parties specifically and expressly acknowledge that they mutually waive the provisions of Domestic Relations Law 236.  This agreement shall constitute an "Opting Out" agreement pursuant to which the parties request that the court, in any contemporaneous or subsequent matrimonial proceedings, incorporate the provisions of this agreement in lieu of making

independent determination with respect to equitable distribution and all other issues addressed in this agreement.

1.5   The parties were married on August 16, 1986.

1.6   There are two children born of this marriage, to wit, Anthony Irizarry, d/o/b 9/2/1998 and Jonathan Irizarry, d/o/b 8/4/1994; no other children are expected to be born of this union.

1.7   In determining equitable distribution of their marital property, the parties have considered the following factors:

a.  Income and property of each property at the time of marriage and the time of making this agreement;

b.  Duration of the marriage and the age and health of both parties.

c.  The need of a custodial parent, if any, to occupy or own the marital residence and to use or own its household effects;

d.  The loss or waiver of any inheritance or pension right by virtue of this agreement, or upon dissolution of the marriage, as of the date of dissolution;

e.  Any provision for spousal maintenance payments to either party
to this Agreement.

f.  Any equitable claim to, interest in, or direct or indirect
contribution made to the acquisition of such marital property by
either party, whether having title or not, including the joint efforts
or expenditures and contributions and services rendered by either
party as spouse, parent, wage earner or homemaker, and to the
career or career potential of the other party;

g.  The liquid or non-liquid character of all marital property;

h.  The probable future circumstances of each party;

i.  The impossibility or difficulty of evaluating any component assets
or any interest in a business, corporation or profession, and the
economic desirability or retaining such asset intact and free from
any claim or interference by the other party;

j.  Any distributive or deferred award or payments to either party
provided for in this Agreement or which might have otherwise
been awarded by any court of competent jurisdiction;  and

k.  Any other factor deemed by the parties to be just and proper
under the circumstance of their marriage and its future

## ARTICLE II

## SEPARATION AND LIVING APART

2.1 It shall hereafter be lawful for each of the parties to live separately and apart from the other, to continue to live separate and apart, free from interference, authority or control, directly or indirectly, by each other, as fully as if they were unmarried.  Each party may conduct and engage in any employment, profession, business or trade which to such party may in his or her opinion seem advisable.

2.2  Neither party shall attempt to compel the other to cohabit or dwell with him or her.

2.3  Neither of the parties shall molest or annoy the other, or interfere in any way with the separate and independent life of the other.

2.4  Both parties acknowledge under oath that they have taken or will take all steps necessary to remove any religious barriers to the remarriage of the parties following the granting of a civil divorce.

## ARTICLE III

## PERSONAL PROPERTY AND LIQUID ASSETS

3.1   The parties have fully disclosed and discussed their marital and separate personal property and with the exception of any items set forth herein they have divided same to their mutual satisfaction.   All items shall henceforth be the sole and exclusive property of the person in whose possession they are at the time of the execution of this agreement.

3.2   With respect to any items enumerated herein as items to be transferred pursuant to this agreement, the parties agree that within thirty days of the execution of this agreement the party possession such items shall make arrangements to have such items available to be picked up by the party to acquire them at a mutually agreed time and place.

3.3   The husband shall retain ownership and possession of any motor vehicle titled in his name at the time of this agreement, including a Ford Expedition, two ford Econoline vans.   The wife shall retain ownership, title and possession of any motor vehicle titled in her name at the time of this agreement.

3.4   Each party shall retain ownership and control of all bank accounts in his or her individual name.   All joint bank accounts of the

parties shall be divided equally at the time of the execution of this agreement.

3.5   Each party shall retain ownership and control of any stocks and/or investment accounts in their own name.

3.6   The parties have divided their furniture and miscellaneous assets to their mutual satisfaction.

3.7   The parties have no business or intangible assets to distribute.

3.8   Each party shall be responsible for any debts or obligations now in his or her own name and will not incur any debt for which the other may be held responsible in the future.   Any joint debts in the name of both of the parties at the time of this agreement shall be satisfied and paid from the proceeds of sale of the marital residence as set for the herein, and to the extent not so satisfied from the net sale proceeds, the parties will remain equally responsible for any such marital debts that are at the time of this agreement in the names of both parties.  All debts in the individual name of either party shall be the sole responsibility of that party, and there shall be no future recourse against the other party for satisfaction of such individual debt.  The parties further represent and agree that they will indemnify and hold each other harmless with respect to the debts in his or her own name individually.

3.9  ~~The Husband shall have title and possession of the family dog~~

~~Hunter.~~

3.10  Husband shall have title and possession to all of his tools, work equipment and lawn machinery and equipment now located at the premises to be sold.   Husband shall be entitled to access to the premises on reasonable notice to the Wife for the purpose of recovering said items.

## ARTICLE IV

## REAL PROPERTY

4.1  The parties own the premises located at 602 Orrs Mill Road, New Windsor, New York at tenants by the entirety.   The mortgage against the premises is now in default.   The property is occupied by the Wife at this time.  There is an accepted offer to purchase the property from the parties.  Schedule A.  The prospective purchases is storm King Art Center and purchase price is $275,000.00.  The parties hereby represent and agree that they will both fully cooperate and sign all documents necessary to complete the timely sale of this property to the buyer, Storm King Art Center.

4.2  Wife shall maintain the property and keep it in good repair until the sale of is completed.

4.3   In the event that for any reason the sale of the property to Storm King Art Center is not completed, the property will continuously be listed for sale by the parties with Keller Williams Realty, or any other listing agent with which the parties may mutually agree to relist the property, for a listing price of $329,000.00 with a Real Estate broker licensed in New York.

4.4   Both parties will cooperate and participate in the sale of the premises, and will sign all documents necessary to effectuate the sale. Upon the sale of the premises the proceeds of sale of the real estate will be applied first to payment of the outstanding mortgage indebtedness, penalties, interest, bank attorney's fees, taxes and closing costs. Thereafter, the remaining net proceeds will be applied to the payment of any marital debts that are in the names of both parties at the time of this agreement.    Any net proceeds of sale remaining after the payment of the aforesaid obligations will be divided equally between the parties.

## ARTICLE V

### PENSIONS & EMPLOYEE BENEFITS

5.1   Each party has been advised of the existence of any pension or employee benefit plan of the other party, and has had a full and ample opportunity to value such plan.    Neither party to this agreement has such a retirement benefit available to them.

5.2  The parties mutually waive their respective rights to assert any claim against the pension plans of each other, including any claims to defined benefit or defined contribution plans.

### ARTICLE VI

### MAINTENANCE

6.1   The parties acknowledge that they have been advised of their respective rights to claim maintenance from the other.

6.2  The parties mutually waive any claim to receive maintenance from the other.

6.3  In determining the amount of and duration of any maintenance payment to be made by either party to the other, the parties have considered the following factors:

a.  The income and property of the respective parties, including the distribution of marital property provided for in this agreement or which might have otherwise been awarded by any court of competent jurisdiction;

b.  The duration of the marriage and age and health of both parties;

c.  The present and future capacity of the parties to be self
    supporting;

d.  The period of time and training necessary to enable the person
    having need to be self supporting;

e.  The presence of children of the marriage, if any, in the respective
    homes of the parties;

f.  The standard of living established during the marriage to the
    extent practical and relevant;

g.  The tax consequences to each party

h.  The contributions and services of the party requiring maintenance
    as a spouse, parent, wage earner and homemaker, and to the
    career and career potential of the other;

l.  The wasteful disposition of family assets, if any, by either party;
    and

i. Any additional factors outlined in Domestic Relations Law Section 236 (b-b) (E); and

j. Any other factor which the parties have deemed to be just and proper under the circumstances of their marriage and its future dissolution.

7.4   The parties acknowledge that after the effective date of Domestic Relations Law Section 236 (5-a), a validly executed agreement or stipulation entered into by the parties must include a provision stating that the parties have been advised of the provisions of Domestic Relations Law Section 236 (5-a) and that the presumptive award provided for therein results in the correct amount of temporary maintenance, and that they consent to incorporation of any provision made in this agreement within any subsequent divorce judgment to being entered notwithstanding the provisions of Domestic Relations Law Section 236 (5-b).   The parties further acknowledge that based on their best understanding of the implementation of Domestic Relations Law Section 236 (5-b) the probable temporary maintenance obligation of the payor spouse were the guidelines established by Domestic Relations Law Section 2356 (5-b) to be applied would be $0 per week. This calculation is based upon the lesser of the sums derived from the following calculation methods:

Not applicable

To the extent that the parties have deviated from the maintenance amount set forth above by fixing a different amount in this agreement, they have done so knowingly and voluntarily in consideration of other promises, covenants and agreement contained herein particularly as such agreements relate to distribution of marital property and allocation of marital debt.

## ARTICLE VIII

## CHILD SUPPORT

8.1    In light of the terms of this agreement, the age of the minor child of the parties (18), the payment of joint debts from the sale of the proceeds of the marital residence and the comparable incomes of the parties and the right of the parties to freely contract with each other in settlement, this agreement makes no provision for the payment of child support by one party to the other.

8.2    Both parties have been advised of the provisions of the child support standards act.

8.2   In 2014 the father earned $60,495.00 per annum and the mother earned $30,000.00 per annum.   The combined parental income for CSSA purposes is $90,495.00, less FICA and Med, $6,577.91, which comes to an adjusted combined parental CSSA amount of $83,917.09. The ratio of combined parental income between these parents is   35% mother and 65 % father.   $83,917.09 x .17 percent = $14,265.90 annual combined parental child support obligation.   $14,265.90 x .65% = $9,272.83 annual child support obligation of the father.   The weekly obligation of the father is $178.00 each week.   $14,265.90 x .35 = $4,993.06 annual child support obligation of the mother. The weekly obligation of the mother is $96.02.

8.3   The father will provide health insurance for the children through his employment.  The mother will provide her own health insurance for herself upon entry of the judgment of divorce herein.  Unreimbursed expenses shall be claimed by the party by giving a written statement to the other party for the unreimbursed services within thirty (30) days of the expenses being incurred.   The party who did not incur the expense shall then have thirty (30) days from receipt of the bill to reimburse the one who did pay the out of pocket expense.   The party who incurs the out of pocket expense shall send reimbursement to the other in an amount according to the ratio set forth above with respect to basic child support, 65 % father and 35 % mother.

8.4   The father shall be entitled to claim the child as a tax exemption

8.5   Notwithstanding the foregoing, neither party shall pay child to support to the other by this agreement.

## ARTICLE IX

## INSURANCE

9.1   Each party shall be responsible for maintaining his or her own health insurance coverage following entry of judgment of divorce herein.

## ARTICLE X

## DEBTS

10.1   The parties agree that neither party shall henceforth incur, or attempt to incur, any debt, charge or obligation for which the other party would be responsible.

10.2   With respect to any debts assumed by either party pursuant to this agreement, the party assuming such debts shall indemnify and hold harmless the other party from any liability form such creditor, including the costs and expenses (including legal fees) of any legal proceedings

ARTICLE XI

ESTATES

11.1    Each party hereby irrevocably releases, waives and relinquishes any and all present and future rights under the present and future laws of any jurisdiction or under any will or testamentary writing now or hereafter in existence to share in and to act as executor or administrator or trustee of the estate of the other party.

11.2    This article shall constitute a mutual waiver of any right of election contained in Section 5.1.2 of the Estates, Powers and Trusts Law of the State of New York or any similar rights contained in any other statute.

11.3    This article shall not prevent either party from henceforth making a testamentary bequest to the other party by means of a will executed subsequent to this agreement.

ARTICLE XIV

REPRESENTATION

14.1  Each party has been fully advised and is aware of, his or her right to independent legal representation in connection with the execution and negotiation of this agreement.

14.2   The Husband has been represented by Steven Nussbaum, Esq., 108 Main Street, New Paltz, NY.

14.3  The Wife has represented herself with respect to this agreement having first been advised of her independent right to have the advice and services of an independent attorney working on her behalf with respect to this matter.

## ARTICLE XII

## DEFAULT

12.1    In the event that either party defaults in the performance of any obligation imposed by this agreement, and such default is not remedied within ten (10) days of the sending of notice of such default by certified mail, the defaulting party agrees to indemnify the other party and to reimburse him or her for any and all costs, expenses and attorney's fees resulting from or made necessary by the bringing of any suit or other proceeding to enforce any of the terms or conditions of this agreement.

## ARTICLE XIII

## DISCLOSURE

13.1    This agreement has been entered into after full mutual disclosure of income, assets and liabilities of the parties.

## ARTICLE XV

15.1.    Each of the respective rights and obligations of the parties pursuant to this agreement shall be deemed independent and may be enforced independently irrespective of any other rights and obligation set forth herein.

15.2    Invalidity or unenforceability of a provision of this agreement shall not affect the validity of any other provision of the agreement.

15.3    This agreement may be modified only by a writing subscribed by both parties.

15.4    Waiver of the strict enforcement of any provision of this agreement shall not be deemed to constitute a waiver of any other provision of the agreement, or of the right to strictly enforce the provision waived at a later time.

15.5    This agreement shall be construed in accordance with the laws of the State of New York.

15.6   The parties shall promptly execute and deliver any and all other and further instruments as may be necessary from time to time in order to implement the provision of this agreement,

IN WITNESS WHEREOF, the parties have set their hands on the dates indicated below.

JOSEPH L. IRIZARRY                    ANNA M. IRIZARRY

SCHEDULE A

11/09/1999 TUE 15:06 FAX

State of New York
County of Ulster } SS:

On the 9th day of September in the year 2016 before me, the undersigned, a Notary Public in and for said State, personally appeared Joseph L. Irizarry, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individuals(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

STEVEN NUSSBAUM
Notary Public, State of New York
No. 4923766
Qualified in New York County
Commission Expires February 16, 2018

11/09/1999 TUE 15:06 FAX

State of New York
County of Ulster } SS:

On the _9th_ day of _September_ in the year _2016_ before me, the undersigned, a Notary Public in and for said State, personally appeared _Ana M. Lazar_, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

STEVEN NUSSBAUM
Notary Public, State of New York
No. 4923755
Qualified in New York County
Commission Expires February 16, 19~~~~ 2018



New York State
DEPARTMENT OF STATE
Division of Licensing Services
P.O. Box 22001
Albany, NY 12231-0001

Customer Service: (518) 474-4429
www.dos.state.ny.us

## New York State Disclosure Form for Buyer and Seller

### THIS IS NOT A CONTRACT

*New York State law requires real estate licensees who are acting as agents of buyers or sellers of property to advise the potential buyers or sellers with whom they work of the nature of their agency relationship and the rights and obligations it creates. This disclosure will help you to make informed choices about your relationship with the real estate broker and its sales agents.*

*Throughout the transaction you may receive more than one disclosure form. The law may require each agent assisting in the transaction to present you with this disclosure form. A real estate agent is a person qualified to advise about real estate.*

*If you need legal, tax or other advice, consult with a professional in that field.*

### Disclosure Regarding Real Estate Agency Relationships

**Seller's Agent**

A seller's agent is an agent who is engaged by a seller to represent the seller's interests. The seller's agent does this by securing a buyer for the seller's home at a price and on terms acceptable to the seller. A seller's agent has, without limitation, the following fiduciary duties to the seller: reasonable care, undivided loyalty, confidentiality, full disclosure, obedience and duty to account. A seller's agent does not represent the interests of the buyer. The obligations of a seller's agent are also subject to any specific provisions set forth in an agreement between the agent and the seller. In dealings with the buyer, a seller's agent should (a) exercise reasonable skill and care in performance of the agent's duties; (b) deal honestly, fairly and in good faith; and (c) disclose all facts known to the agent materially affecting the value or desirability of property, except as otherwise provided by law.

**Buyer's Agent**

A buyer's agent is an agent who is engaged by a buyer to represent the buyer's interests. The buyer's agent does this by negotiating the purchase of a home at a price and

on terms acceptable to the buyer. A buyer's agent has, without limitation, the following fiduciary duties to the buyer: reasonable care, undivided loyalty, confidentiality, full disclosure, obedience and duty to account. A buyer's agent does not represent the interest of the seller. The obligations of a buyer's agent are also subject to any specific provisions set forth in an agreement between the agent and the buyer. In dealings with the seller, a buyer's agent should (a) exercise reasonable skill and care in performance of the agent's duties; (b) deal honestly, fairly and in good faith; and (c) disclose all facts known to the agent materially affecting the buyer's ability and/or willingness to perform a contract to acquire seller's property that are not inconsistent with the agent's fiduciary duties to the buyer.

**Broker's Agents**

A broker's agent is an agent that cooperates or is engaged by a listing agent or a buyer's agent (but does not work for the same firm as the listing agent or buyer's agent) to assist the listing agent or buyer's agent in locating a property to sell or buy, respectively, for the listing agent's seller or the buyer agent's buyer. The broker's agent does not have a direct relationship with the buyer or seller and the buyer or seller can not provide instructions or direction directly to the broker's agent. The buyer and the seller therefore do not have vicarious liability for the acts of the broker's agent. The listing agent or buyer's agent do provide direction and instruction to the broker's agent and therefore the listing agent or buyer's agent will have liability for the acts of the broker's agent.

**Dual Agent**

A real estate broker may represent both the buyer and seller if both the buyer and seller give their informed consent in writing. In such a dual agency situation, the agent will not be able to provide the full range of fiduciary duties to the buyer and seller. The obligations of an agent are also subject to any specific provisions set forth in an agreement between the agent, and the buyer and seller. An agent acting as a dual agent must explain carefully to

DOS-1736-a (Rev. 11/10)

## Purchase Agreement

**Better Homes | RAND REALTY**

**THIS IS A CONTRACT. THIS IS LEGALLY BINDING**

**OFFICE LOCATION:** Pine Bush        **STREET ADDRESS:** 55 Main Street

**TOWN NAME:** Crawford        **STATE:** NY        **ZIP:** 12566

**PHONE:** 845-744-2095        **FAX:** 845-744-5268

**Date:** 08/19/2016

**PURCHASERS**    NAME: Storm Ring Art Center

ADDRESS: 1 Museum Road, New Windsor, NY 12553

TELEPHONE NO.: _____

*desires to purchase and*

**SELLERS**    NAME: Irizarry  *Joseph & Anna Irizarry*

ADDRESS: *602 Orrs Mills Rd., New Windsor, NY 12553*

TELEPHONE NO.: _____

*intends to sell the real property known as*

PROPERTY ADDRESS 602 Orrs Mills Road, New Windsor, NY 12553

*upon the following terms and conditions:*

**1. TOTAL PRICE:**    $ 275,000 _____ payable as follows:

A.$ 13,750 _____ down payment by cash, bank check or personal check upon the signing of a formal contract of sale, based upon the terms of this preliminary agreement, delivered to the seller or seller's attorney on or about _____ ; or upon submission of the Contract of Sale via hand delivery or mail;

B.$ _____ by the purchasers to obtain in a mortgage.

C.$ 261,250 _____ by cash, certified or bank check, upon closing of title.

**2. ADJUSTMENTS:**    All adjustments if any, shall be made in accordance with local bar association customs.

**3. PERSONAL PROPERTY:**    All fixtures and articles of property attached or appurtenant to or used in connection with said premises are included in the sale as specified in the MLS listing # 4633234 for the premises, unless otherwise specified.

This purchase is conditioned upon approval of the Board of Trustees of Storm King Art Center

**4. CLOSING OF TITLE:**    Closing of title to take place on or about 11/15/2016

**5. BROKER:**    By their signatures below, the parties agree that Better Homes and Gardens® Real Estate Rand Realty is the real estate broker that has brought about this meeting on essential terms of this Purchase Agreement, and the sellers agree to pay the brokerage commission thereby earned by cash, certified, or bank check.

**6. LEAD DISCLOSURE:**    The seller of any interest in residential in real property is required to provide the Buyer with any information on lead-based paint hazards from risk assessments or inspections in the Seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards may be done prior to purchase and within 10 days of acceptance of this offer.

**7. PRESENTATION:**    ☐ This offer is to be presented personally by the Buyer's Agent from Rand Realty to the Seller.

**8. CONTINGENCIES:**    This Agreement is contingent upon the following:

☑ a. Attorney Approval
**This Agreement is contingent upon Purchaser and Seller obtaining approval of this Agreement by their respective attorneys as to all matters contained herein.**

☑ b. Inspection
This Agreement is contingent on a satisfactory engineering and termite inspection of the property.

☐ c. Mortgage Contingency
This Agreement and the formal contract will be subject to and conditioned upon the ability of the purchasers to secure a firm mortgage commitment in the amount indicated in Paragraph 1.B. for a period of 30 years, at the prevailing rate of interest, said commitment to be secured within 30 days of the contract date; purchasers agree to execute all forms and pay all fees that may be required by the lending institution and to otherwise make a good faith application for said mortgage commitment.

**9. NOTES:**
The seller and buyer acknowledge that Better Homes and Gardens® Real Estate Rand Realty has provided written disclosure on seller, buyer and disclosed dual agency and that we understand that in this transaction, seller ☐ buyer ☑ dual ☐ agency has been established (check applicable box).
THE ABOVE TERMS AND CONDITIONS ARE AGREED UPON SUBJECT TO ATTORNEY REVIEW AND FORMAL CONTRACT OF SALE.
RECEIPT OF A COPY OF THIS PRELIMINARY AGREEMENT IS HEREBY ACKNOWLEDGED BY ALL PARTIES:

| | | |
|---|---|---|
| _____ Purchaser | | _____ Seller |
| _____ Purchaser | | _____ Seller |



## DISCLOSURE TO SELLER REGARDING
## PROPERTY CONDITION DISCLOSURE STATEMENT

As the seller of residential real property, you are required by law to complete and sign a Property Condition Disclosure Statement as prescribed by Real Property Law §462(2) and cause it, or a copy thereof, to be delivered to a buyer or buyer's agent prior to the signing by the buyer of a binding contract of sale. A copy of the Property Condition Disclosure Statement containing the signatures of both the buyer and seller, and must be attached to the real estate purchase contract. If you acquire knowledge which renders materially inaccurate a Property Condition Disclosure Statement previously provided, you must deliver a revised Property Condition Disclosure Statement to the buyer as soon a practicable. In no event, however, will you be required to provide a revised Property Condition Disclosure Statement after the transfer of title from you to the buyer or after the buyer has commenced occupancy of the property. If you fail to deliver a Property Condition Disclosure Statement to the buyer prior to the buyer signing a binding contract of sale, the buyer will be entitled to a credit in the amount of $500.00 against the purchase price of the property upon the transfer of title.

I have received and read this disclosure notice regarding the property referred to as:

MLS # _____

Seller (print) : _____

Seller
(signature) _____   Dated: _____

Seller (print)_____

Seller
(signature) _____   Dated: _____

Agent (print)_____

Agent
(signature) _____   Dated: _____

KELLER WILLIAMS
R E A L T Y

www.KWHV.com   Email Chrisgil@kw.com
522 Route 32, PO Box 1005



## KELLER WILLIAMS
R E A L T Y

### MORTGAGE INFORMATION RELEASE AUTHORIZATION

Property Owner (s) _JOSEPH + Anna IRIZARRY_
Property Address _602 ORCS MILLS RD_
_NEW WINDSOR NY 12553_
Mortgage Account # _1158037498_
Mortgage Holder: _WELLS FARGO_
Address: _____

Contact Person _BRIanna CORTNEY_ - FILE # _15042125_
Phone: _817-458-8420_    Email: _____
Fax: _____    Other: _____
Other Mortgage Holder: _____

Date: _7/18/16_

### TO WHOM IT MAY CONCERN:

I/We, _JOSEPH + ANNA IRIZARRY_, do request and authorize any and all
information on my loan account to be released to:

I am aware that the above loan/loans are in default and I'm working to cure this default
by selling the property. Please provide all the necessary information and assistance to the
above named, and their associates, working on my behalf.

SELLERS:
Print _ANNA IRIZARRY_    SSN# _047 708460_
Signature _Anna Irizarry_    Date of Birth _7/9/64_

Print _JOSEPH IRIZARRY_    SSN# _____
Signature _Joseph Irizarry_    Date of Birth _4-9-63_

Home Phone: _845-527-9950_    Cell: _____

## TERMINATION

13.    Owner(s) understands that if Owner(s) terminates the Agent's authority prior to the expiration of its term, Agent shall retain its contract rights (including but not limited to recovery of its commission, advertising expenses and/or any other damages) incurred by reason of an early termination of this agreement.

## ADDITIONAL POINTS

14.    Additional Points of Agreement, if any: _____

## IN-HOUSE SALES

15.    If the Broker has an agency relationship with the buyer ("buyer's broker"), and that buyer expresses interest in property owned by a seller who also has an agency relationship with the Broker ("seller's broker"), a conflict has arisen.

The Broker shall immediately advise both the buyer client and the seller client of the pertinent facts including the fact that a dual agency situation has arisen, and that the following options are available:

[a] The Broker and buyer could dissolve their Agency relationship. The buyer may then seek to retain another broker, and/or an attorney, or may represent (her)himself. This would release the buyer from any Broker employment contract which has entered into with the Broker.    Broker may continue to act as agent for the seller.

[b] The Broker and the seller could dissolve their Agency relationship. The seller may then seek to retain another broker, and/or an attorney, or may represent (her)himself. This would release the seller from any listing agreement which was entered into with Broker. The Broker may continue to act as Agent for the buyer.

[c] With fully informed consent, the buyer and seller may elect to continue with the brokerage firm serving as a consensual dual agent, which is the exception to the general rule that agents serve one principal. As a dual agent, the firm and its licensee agents have a duty of fairness to both principals. By mutual agreement the buyer and seller may identify who will negotiate for each principal. For example: [a] the licensee who signed the buyer as a principal of the brokerage firm may negotiate on behalf of the buyer principal and [b] the licensee who signed the seller as a principal of the firm may negotiate on behalf of the seller principal. This is referred to in Real Property Law Section 443, Agency Relationship Disclosure Statement as "Designated Sales Associates".

In either case, the brokerage commission will be paid by the seller in accordance with the listing agreement with the seller, unless different arrangements have been negotiated.

As a dual agent, the firm and its agents cannot furnish undivided loyalty to either party.

As a dual agent, the firm and its licensee agents have a duty not to disclose confidential information given by one principal to the other principal, such as the price one is willing to pay or accept. Such information may already be known to the firm and its agents. If the information is of such a nature that the agent cannot fairly give advice without disclosing it, the agent cannot properly continue to act as an agent.

The buyer, seller and broker shall memorialize the option of their mutual choice by executing a statutory disclosure notice. If there is no mutual agreement, the proposed transaction between buyer and seller shall not be pursued.

## ALL MODIFICATIONS TO BE MADE IN WRITING

16.    Owner(s) and Agent agree that no change, amendment, modification or termination of this agreement shall be binding on any party unless the same shall be in writing and signed by the parties.

## HOME EQUITY THEFT PREVENTION ACT

17.    Owner acknowledges that Owner is aware of the Home Equity Theft Prevention Act and particularly the provisions of Section 265 of the Real Property Law of the State of New York.  In order the ensure compliance with same, Owner warrants and represents to Agent that:

(a)    Owner is not in default of any mortgage affecting real property by reason of there being payments due and unpaid on any mortgage for two (2) months or more;
(b)    there are no actions pending against the real property to foreclose a mortgage; and
(c)    the property which is the subject of this listing is not shown as an active property on a tax lien sale list and all real estate taxes have been paid through the current lien date.

In the event that the above circumstances change after the execution of this listing agreement, Owner hereby covenants and agrees that Owner will communicate with Agent regarding any of the matters referred to above in subparagraph (a), (b) or (c) and to keep Agent fully apprised of same.

_(signature)_ (OWNER) _____ (DATE)    Cifus Sutach _(signature)_ (AGENT) _____ (DATE)

_(signature)_ (OWNER) _____ (DATE)    By _(signature)_ (Authorized Representative) _____ (DATE)

Owner's Mailing Address _____    Agent's Address _____

Owner's Telephone: _____    Agent's Telephone: 585-494-3745

## DEFINITIONS

In accordance with the requirements of the New York State Department of State the undersigned Owner(s) does (do) hereby acknowledge receipt of the following:

1.    Explanation of "Exclusive Right to Sell" listing;    2.    Explanation of "Exclusive Agency" listing

EXPLANATION OF EXCLUSIVE RIGHT TO SELL: (As worded verbatim by the Department of State)

An "exclusive right to sell" listing means that if you, the owner of the property find a buyer for your house, or if another broker finds a buyer, you must pay the agreed commission to the present broker.

EXPLANATION OF EXCLUSIVE AGENCY: (As worded verbatim by the Department of State)

An "exclusive agency" listing means that if you, the owner of the property find a buyer, you will not have to pay a commission to the broker. However, if another broker finds a buyer, you will owe a commission to both the selling broker and your present broker.

## "THE FAIR HOUSING ACT"

The Civil Rights Act of 1968 known as the Federal Fair Housing Law makes illegal any discrimination based on race, color, religion, sex or national origin in connection with the sale or rental of housing.  The 1988 amendment to this Act (The Fair Housing Amendments Act of 1988) expands the coverage of the law to handicapped persons and families with children.  Agent and Owner agree to comply fully with State and local statutes and Federal Fair Housing laws.

## Article 10 of the REALTOR Code of Ethics states:

"REALTORS® shall not deny equal professional services to any person for reasons of race, color, religion, sex, handicap, familial status, national origin, or sexual orientation. REALTORS® shall not be parties to any plan or agreement to discriminate against a person or persons on the basis of race, color, religion, sex, handicap, familial status, national origin or sexual orientation."

_(signature)_ Owner    _(signature)_ Owner

Rev. March 2014

**EXCLUSIVE RIGHT TO SELL AGREEMENT**                    MLS# _____

THIS AGREEMENT is effective _July_ ___, 201_6_, and confirms that _JOSEPH + HUNA IRIZARRY_ has (have) appointed _Keller Williams Realty_ a licensed real estate brokerage in the State of New York, to act as Agent for the sale of property known as _602 ORRS MILLS RD    NEW WINDSOR_, New York.

In return for the Agent's agreement to use Agent's best efforts to sell the above property, the Owner(s) agree(s) to grant the Agent the exclusive right to sell this property under the following terms and conditions:

**PERIOD OF AGREEMENT**

1.  This agreement shall be effective from the above date and shall expire at midnight on _July_ ___, 201_7_.

**PRICE AT WHICH PROPERTY WILL BE OFFERED AND AUTHORITY**

2.  The property will be offered for sale at a list price of _329,000_ and shall be sold, subject to negotiation, at such price and upon such terms to which Owner(s) may agree. The word Owner refers to each and ALL parties who have ownership interest in the property and the undersigned represent(s) they are the sole and exclusive owners and are fully authorized to enter into this agreement.

**COMMISSION TO BE PAID TO AGENT**

3.  The Agent shall be entitled to and Owner shall pay to Agent one commission of ___% of the selling price. Both the Owner(s) and the Agent acknowledge that the above commission rate was not suggested nor influenced by anyone other than the parties to this Agreement. Owner(s) hereby authorizes Agent to make an offer of cooperation to any other licensed real estate broker with whom Agent wishes to cooperate. Any commission due for a sale brought about by a Sub-Agent or Buyer's Agent (see Real Property Law Section 443 Agency Relationship Disclosure Statement for explanation) (another broker who is authorized by Agent to assist in the sale of Owner(s) property) or to an authorized Buyer(s) Agent shall be paid by the Agent from the commission received by the Agent pursuant to this Paragraph.

Owner(s) hereby directs the commission offered by Agent to HGMLS Participant Broker's Agents shall be ___% of the gross selling price; the commission offered by Agent to HGMLS Participant Broker's Agents shall be ___% of the gross selling price; the commission offered to HGMLS Participant Buyer(s) Agents shall be _2½_% of the gross selling price. Agent may or may not offer compensation to non-HGMLS participant licensed real estate brokers on a case by case basis.

In the event that Owner(s) authorizes Agent to compensate a Buyer's Agent, Owner(s) acknowledges Owner's(s') understanding that such Buyer's Agent is not representing Owner(s) and that the Buyer's Agent will be representing only the interests of the prospective purchaser.

**OWNER(S) OBLIGATIONS AFTER THE EXPIRATION OF THIS AGREEMENT**

4.  Owner(s) understands and agrees to pay the commission stated in paragraph 3, if (a) the property is sold or transferred, or (b) is the subject of a written contract of sale, or (c) if the Owner(s) reach a verbal agreement with a buyer regarding the material terms of the sale, either during the period of this Agreement, or within ___ months after the expiration date of this Agreement involving a person, directly or indirectly, with whom the Agent or a Cooperating Broker has negotiated or to whom the property is offered, quoted or shown during the period of this listing Agreement. Owner(s) will not, however, be obligated to pay such commission if Owner(s) enters into a valid Exclusive Listing Agreement with another New York State licensed real estate broker after the expiration of this Agreement.

**WHO MAY NEGOTIATE FOR OWNER(S)**

5.  Owner(s) agree(s) to direct all inquiries to the Agent. Owner(s) elect(s) to have all offers submitted through Agent _✓_ or Cooperating Agent ___.

**SUBMISSION OF LISTING TO MULTIPLE LISTING SERVICE**

6.  Both Owner(s) and Agent agree that the Agent immediately is to submit this listing agreement to the Hudson Gateway Multiple Listing Service, Inc. ("HGMLS"), for dissemination to its Participants. No provision of this Agreement is intended to nor shall be construed to establish or imply any contractual relationship between the Owner(s) and HGMLS nor has HGMLS in any way participated in any of the terms of this agreement, including the commission to be paid. Owner(s) acknowledge(s) that the Agent's ability to submit this listing to HGMLS or to maintain such listing amongst those included in any compilation of listing information made available by HGMLS, is subject to Agent's continued status as a Participant in good standing of HGMLS.

Data including photographs and sketches relating to Owner's property will be aggregated with that of other properties listed by Participants of HGMLS, and will become the copyrighted data of HGMLS. Owner and Listing Agent hereby assign to HGMLS all rights of ownership and copyright to such data, for dissemination to its Participants and others as HGMLS may elect pursuant to its copyright.

**FAIR HOUSING**

7.  Agent and Owner agree to comply fully with local, state and federal fair housing laws against discrimination on the basis of race, color, religion, sex, national origin, handicap, age, marital status and/or familial status, children, sexual orientation or other prohibited factors.

**AUTHORIZATION FOR "FOR SALE" SIGN AND OTHER SERVICES**

8.  Agent (_✓_ is, ___ is not) authorized to place a "For Sale" sign on the property. Owner acknowledges that Agent has fully explained to Owner(s) the services and marketing activities which Agent has agreed to provide.

**REQUIREMENTS FOR PUBLICATION IN HGMLS COMPILATION**

9.  This listing agreement is not acceptable for publication by HGMLS unless and until the Owner(s) has duly signed this agreement and an acknowledgement reflecting receipt of the definitions of "Exclusive Right to Sell" and "Exclusive Agency" required by the New York State Department of State - Division of Licensing Services. The Authorization by Owner to publish this listing in the HGMLS compilation also includes the right of Agent to advertise the listing information, in any medium or media including electronic formats and including but not limited to, the Internet.

**LOCKBOX AUTHORIZATION**

10.  Agent (_✓_ is hereby authorized to use a lockbox, ___ is not authorized to use a lockbox. Owner understands that neither Agent, any cooperating agent, HGMLS or any Board of Realtors, shall be responsible for any theft, loss or damages attributed to the use of a lockbox.

**RENTAL OF PROPERTY**

11.  Should the Owner(s) desire to rent the property during the period of this agreement, Agent is hereby granted the sole and exclusive right to rent the property, exclusive "FOR RENT" sign privilege and the Owner(s) agrees to pay Agent a rental commission of ___% The applicable commission for the lease term is due and will be paid ___ upon the execution of the lease ___ upon the date of occupancy. The commission for each and every subsequent renewal thereof, is due and will be paid upon the commencement of each renewal term.

**COMMISSION PAYMENT**

12.  [a] Escrow. If, for any reason, Agent is not paid the compensation set forth herein on the due date, Owner shall establish an escrow account with a party mutually agreeable to Agent and Owner at a title insurance company or other, and shall place into said escrow account an amount equal to the compensation set forth herein. The escrow monies shall be paid by Owner to said escrow agent and shall be held in escrow until the parties' rights in the escrow monies have been determined (i) by the written agreement of the parties(ies) pursuant to an arbitration award; (iii) by order of a court of competent jurisdiction; or (iv) some other process to which the parties agree to in writing.

[b] Attorney's Fees. In any action, proceeding or arbitration to enforce any provision of this Agreement, or for damages caused by default, the prevailing party shall be entitled to reasonable attorney's fees, costs and related expenses, such as expert witness fees and fees paid to investigators. In the event Agent hires an attorney to enforce the collection of any brokerage commission due hereunder and is successful in collecting all or any portion thereof with or without commencing a legal action or proceeding, Owner agrees to pay its reasonable attorney's fees, costs and related expenses incurred by Agent.

[c] Commission Escrow Act. Alternatively, Broker shall have the right to exercise Broker rights under the Commission Escrow Act and specifically, Real Property Law Section 294-b. The provisions of said Law may require the deposit of the commission claimed by Broker, with the County Clerk in the County in which the property is located. Notice is hereby given in accordance with Section 294-b(4)(k) as follows:

**AT THE TIME OF CLOSING, YOU MAY BE REQUIRED TO DEPOSIT THE BROKER'S COMMISSION WITH THE COUNTY CLERK IN THE EVENT THAT YOU DO NOT PAY THE BROKER HIS OR HER COMMISSION AS SET FORTH HEREIN. YOUR OBLIGATION TO DEPOSIT THE BROKER'S COMMISSION WITH THE COUNTY CLERK MAY BE WAIVED BY THE BROKER.**